## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MARY ADAMS | ) | CASE NO. 09-70001 |
| | ) | |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| ROUNDUP FUNDING, LLC | ) | |
| | ) | |
| Movant | ) | |
| | ) | MOTION TO ALLOW |
| v. | ) | AMENDED PROOF OF CLAIM |
| | ) | |
| MARY ADAMS | ) | |
| | ) | |
| Respondent. | ) | |

_____

### MEMORANDUM DECISION

The Debtor, Mary Adams, according to her own testimony and other evidence, has been the victim of identity theft which has resulted in a number of debts being incurred under her name. This Court has already ruled in her favor with respect to a number of claims to which she filed objections, some of which were contested and others of which were not answered. Just because a number of debts were incurred as a result of fraud of which she was the target, however, does not mean that all debts which she may dispute are so tainted. The particular matter which is now before the Court between Ms. Adams and Roundup Funding, LLC ("Roundup") relates to a balance on a credit card account issued by Bank of America. It provides a window into the world of modern banking and how confusing it can be to try and go back after the fact and determine something as basic as which account documentation relates to a specific credit card account and by whom such account was opened.

The Debtor filed her Chapter 13 petition in this Court on January 2, 2009. On

Schedule F she listed a number of debts, many of which were designated as disputed but others of which were not so designated. One in the undisputed category was an account having an account number containing the last four digits 1351 in the amount of $9,934 owed to Bank of America. Relevant to the dispute before this Court, the Debtor scheduled two credit card accounts ending in the number 6722, one listing Bank of America as the creditor, having a balance of $8,390.44 and shown as disputed, the other listing FIA Card Services as the creditor in exactly the same amount but not listed as disputed. On April 30, 2009, Roundup filed claim number 15 in this case in the amount of $9,934.57 for an account ending in 1351. This claim indicated that the social security number for the account ended in digits 8336, an inconsistency with the Debtor's representation in her filing that her social security number ended in digits 4370. Since that time Roundup has filed two amendments to such claim, one on October 21, 2009, which increased the amount claimed to $10,742.45$^{1}$ and indicating that there was a related account ending in number 6722$^{2}$, and the other on November 23, 2009, which did not change the claim but added some attachments, an application dated May 8, 2004 purportedly signed by Mary R. Adams, a letter dated January 30, 2006, from Ms. Adams to Bank of America protesting

---

[1] This amount was represented to be the sum of an August 30, 2008 charge-off balance of $9,895.57 and post-charge-off interest of $846.88 to the bankruptcy filing date. No reconciliation or other explanation was offered to explain the difference between these amounts and the $9,934.57 amount claimed in the original filing. The difference of $39 between $9,934.57 and $9,895.57 may be explained by the fact that such amount is precisely the same amount charged as a late payment fee in statements leading up to the final account statement.

[2] Also filed with this amended proof of claim were purported copies of monthly account statements in the name of Mary Adams at her residence address for an account ending in number 6722. At the February 3rd hearing counsel for Ms. Adams advised the Court that Ms. Adams insisted that no such monthly statements had been sent to her and that the first time she saw them was when she received a package from Bank of America in response to her letter denying liability on the account on the basis of identity theft.

liability on the basis of alleged identity theft upon an account with a redacted account number, and a document purporting to be a resignation dated July 5, 2002, by Ms. Adams as president of "Dump Truck's Inc."

On August 25, 2009, the Debtor filed an Objection to Roundup's claim, asserting that it was the product of identity theft and denying all liability. The Objection to this claim was originally scheduled to be heard on October 7, 2009, but was re-scheduled for November 4, 2009, and then finally continued to December 16, 2009, when it was tried. When the matter was called to be heard, Roundup's counsel orally moved for a continuance to permit further discovery, including specifically a comparison of handwriting samples. The Court denied this motion on the ground that it was untimely. At trial the Debtor denied both that the signature on the account application was hers and that she had authorized the account to be opened. She also testified that the name appearing on the line requesting "Mother's Maiden Name or Password" contained a name different than her mother's name and was one which she could not identify. A redacted copy of this application was introduced into evidence but both counsel wanted the complete copy of the application to be introduced. This was done after trial and provided to Debtor's counsel and the Court. The Court then invited counsel for the parties to comment on such application and pointed out a fact observed by its law clerk that the social security number it contained was not the same as the Debtor's social security number disclosed as a part of her bankruptcy filing. After checking with his client, Debtor's counsel advised the Court and Roundup's counsel that the social security number listed on the credit application was a replacement number given to the Debtor by the Social Security Administration, but which was never used by the Debtor and that she had no idea how that number was obtained by anyone.

Prior to trial the Debtor never amended her Schedule F to change the designation for the account ending in 1351 from undisputed to disputed, but at trial her counsel stated that the failure to designate the account originally as disputed was his mistake. Following trial Schedule F was amended on December 17, 2009 to record the account as disputed. Following that amendment Roundup filed on January 6, 2010, a Motion to Allow Amended Proof of Claim, which also sought "and/or to allow additional evidence in support of its previously filed Proof of Claim . . . ." This Motion was accompanied by an affidavit signed by one Debra L. Pellicciaro, who identified herself as an officer of Bank of America, N.A. The Court set this Motion for a hearing on February 3 and directed the Debtor to file a detailed answer or response to such Motion, which her counsel did on January 26 accompanied by cross-affidavits in response to the affidavit filed with Roundup's Motion.

In Ms. Pellicciaro's affidavit, she asserted the following to be true:

1. FIA Card Services is a wholly owned subsidiary of Bank of America.

2. That the original contract "may not be available."

3. That on June 2, 2004, Mary Adams opened a Bank of America credit card account ending in number 1418. Immediately following this sentence is the statement, "A redacted copy of the First Charter Platinum Plus Credit Card Application dated May 8, 2004, which, upon information and belief, was completed by Mary R. Adams is attached as Exhibit 'A'."

4. That on November 22, 2004, Ms. Adams filed a "Lost/Stolen claim" upon this account claiming that the card had been taken from her car and that a new account number ending in 7548 was established.

5. That on June 16, 2006, Ms. Adams filed a fraud claim in the amount of "approximately

$445.29" for this account, that these amounts were credited to her account and that a new account number ending in 6722 was established for this account.

6. That in September 2008 this account was "charged-off" and a new account number ending in 1351 was assigned to this account.

7. That over the time this account was open under these varying account numbers Ms. Adams made a number of payments from her personal checking account upon this account.

6. That as of August 30, 2008, there was due and owing on this account $9,934.57 and that there "were no uncredited payments, just counterclaims or offsets" against this account..

7. That on April 15, 2009, the account was sold to Roundup.

At the February 3rd hearing Roundup appeared by counsel and the Debtor appeared personally and with her counsel.  At that hearing, without prior indication of any intent to introduce testimonial evidence in opposition to Roundup's Motion, the Debtor offered the testimony of two witnesses, her former husband, Dorian Adams, and her son, Robert E. Johnson, II.  Mr. Adams was offered to prove that copies of certain checks which had been attached to an affidavit by the Debtor which was filed with her January 26th response to Roundup's Motion were in fact copies of checks upon his corporation's account, Dump Trucks, Inc., which he also referred to as "D T I," in payment of charges on the account in question.  The copies of the checks in question were only of the front side of such checks and in response to questioning from the Court, Mr. Adams testified that he did not know the whereabouts of the original checks at this time and that he had provided records of the account in question to Ms. Adams at some time prior to 2009, which was surprising in light of the statement made by the Debtor in her affidavit executed just eight days previously that "[a]fter receiving the recent motion of Roundup

Funding, LLC, I was able to locate Dorian Adams, my former husband[,] and I was able to obtain copies of canceled checks and receipts from Dump Trucks, Inc., which I have attached to this affidavit." He also testified, as the Court understood his testimony, which was somewhat vague in nature and difficult to follow, that he did not have "credit" when he moved his company to Florida and that Ms. Adams had helped him obtain the credit card.[3] Mr. Johnson was offered to prove that certain checks upon the personal account of, and signed by, his mother, the Debtor, which Roundup had offered as exhibits to Ms. Pellicciaro's affidavit, were not for payments upon her personal account but for his personal charges[4] on the Dump Trucks, Inc. account for which he paid her in cash and personally filled in the payee and the account number after she filled in the amount and signed her name, in effect using her as a money order service.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Consideration of allowance of claims against the bankruptcy estate is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(B). Although Roundup's

---

[3] Initially Mr. Adams testified that he had moved his company to Florida in 2002 and although he was not certain of the date when the Debtor helped him obtain the credit card, he did testify that the Debtor "got" him the credit card to help him get established in Florida. Mr. Adams explained that the Debtor helped him obtain what he thought was an "MBNA" credit card, although at some point in the past, he thought the company was possibly known as "First Charter." Later, upon being re-questioned about these statements, Mr. Adams testified that although the Debtor had "arranged" for him to get credit and even "signed" for him to get credit, he was not sure that she had signed for the particular credit card account at issue.

[4] Both Mr. Adams and Mr. Johnson testified that Johnson had been an employee of Dump Trucks, Inc. in connection with one or more contracts it continued to service in Virginia and that he was issued a corporate credit card to pay for fuel and other job-related expenses.

claim against the estate in this case has yet to be allowed or disallowed, Rule 3008 expressly authorizes the Court at any time to reconsider the allowance or disallowance of any claim. Roundup's Motion to allow a post-trial amendment of its claim and/or to permit it to offer additional evidence is one committed to the Court's appropriate exercise of its discretion.

The Court concludes that two factors are critical to the proper exercise of its discretion in this matter and that once those factors are considered, its decision is not a difficult one. In no order of importance between them, one of those factors is the Debtor's post-trial amendment of her Schedule F to change the status of the credit card account ending in 1351 from undisputed to disputed even though Roundup, in its responses to the Debtor's Objection to its claim, had expressly raised the issue that such designation as undisputed constituted a judicial admission of the Debtor's liability on the account which was binding upon her. The other factor is that on the basis of the various submissions which have been made with respect to the origin, multiple changes in account number, nature and business location of charges upon the account, prior claims of stolen card and fraudulent charges, address of account statements, payment of various charges upon this account or some other one by use of personal checks upon the Debtor's bank account, apparent similarity of signatures between the asserted account application for the account and other undisputed signatures of Ms. Adams contrasted with the vehemence of her denial that the signature is her own, varying social security numbers used and failure on the Debtor's part to disclose an alternate assigned number in her filing information, the testimony of witnesses and the other circumstances of this dispute noted in this Decision, the Court is left in considerable doubt whether its claim objection procedure with respect to Roundup's claim is being used in this instance for its proper purpose, which is to protect the

Debtor and her bankruptcy estate from a manifest wrong, or conversely is being used, either in bad faith or as a result of mistaken certainty on the Debtor's part, to perpetuate if not a fraud, at least an erroneous denial of liability on the account now owned by Roundup. It is fundamental that this Court is empowered to take "any action" or make "any determination necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C.§ 105(a). Because the Court concludes that the only way it can be reasonably confident that an abuse of process will not occur in this matter is to open the process back up and permit full discovery so that all relevant evidence can be assembled and presented, it will grant Roundup's Motion. By separate order it will provide for a ninety day period of discovery to both parties to be followed by a scheduling conference to determine and set such additional hearing or other proceedings as may be appropriate to bring the resolution of Roundup's claim to a just resolution.

        This 10th day of February, 2010.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE