**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 13** |
| | ) | |
| **MARY ADAMS** | ) | **CASE NO. 09-70001** |
| | ) | |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| **WACHOVIA BANK, N.A.** | ) | |
| | ) | |
| Movant | ) | **MOTION TO ALLOW PROOF OF CLAIM,** |
| | ) | **OBJECTION TO CLAIM, MOTION TO** |
| v. | ) | **ABSTAIN, MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| **MARY ADAMS** | ) | |
| | ) | |
| Respondent. | ) | |

---

<u>**MEMORANDUM DECISION**</u>

The dispute now before this Court originates in a business banking relationship

between First Union National Bank, subsequently Wachovia Bank, National Association

("Bank"); its borrower, Adams Grading and Trucking, Inc.; and the latter's owner and loan

guarantor, Mary R. Adams, who is the Debtor.  By the summer of 2007 this relationship had

deteriorated to the point that a Bank Vice President, Elizabeth B. Church, pursuant to an

Unconditional Guaranty dated June 20, 2001 signed by Ms. Adams, undertook to confess

judgment against her in the Clerk's Office of the Circuit Court of Grayson County, Virginia on

August 3, 2007 for "the sum of $96,003.79, which sum includes accrued interest, late charges

and 15% attorneys fees provided in the instruments on which this proceeding is based, plus

interest at the state judgment rate or the rate provided in the instruments which ever [sic] is

higher."  The instruments in question included the Unconditional Guaranty previously noted, a

Note dated June 24, 1999 from Adams Grading & Trucking, Inc. to the Bank in the amount of

$50,000 "or such sum as may be advanced and outstanding from time to time," with interest at

the rate of 9.25%, payable on demand, and another Note dated June 20, 2001 made by Adams

Grading and Trucking, Inc. to the Bank in the same amount but bearing interest at a floating rate

of 1% above the <u>Wall Street Journal</u> published prime rate,[1] likewise payable on demand.  Ms.

Adams, by counsel, filed a "Motion to Reduce and/or Set Aside Confession of Judgment."

Although a period of discovery ensued, the Circuit Court never set the confessed judgment aside.

Nevertheless the defendant's Motion was set for a trial on August 8, 2008 at which time Ms.

Adams appeared and stated that she wished to exercise her right under the loan documents to

demand arbitration.  The Circuit Court then entered an order on August 15, 2008 continuing the

proceeding in that court pending the outcome of arbitration.  Apparently the cost of pursuing

arbitration was considerably more than what Ms. Adams had anticipated because new counsel

for her filed with the Circuit Court on December 22, 2008 and noticed for hearing on the next

day a "Motion Withdrawal From Arbitration" which sought to terminate the arbitration

proceeding and set a new trial date in state court.  Although that is the last pleading in the Circuit

Court file which has been provided to this Court, the Bank has asserted, and the Debtor has not

disputed, that the Circuit Court orally ruled against Ms. Adams and indicated that it would enter

a final order denying her Motion to set aside the confessed judgment.  Before that occurred,

however, the Debtor filed a Chapter 13 petition in this Court on January 2, 2009.

The Bank, by counsel, filed on January 30, 2009 in this case a proof of claim in

---

[1] Both Notes provided that upon default "all outstanding Obligations shall bear interest at
the Interest Rate plus 3% ('Default Rate')."  Both further provided that the term "Obligations"
included "all other obligations under any other Loan Document(s)[.]"  Each further provided that
in the event of conflict between its terms and those "of any loan agreement or any commitment
letter that survives closing, the terms of this Note shall control."

2

the amount of $108,127.06 for the claimed unpaid principal and interest to the date of

bankruptcy upon the two notes which had furnished the basis for the judgment it caused to be

confessed in the Circuit Court of Grayson County.  To be more specific, the proof of claim was

upon the underlying notes, not the state court judgment, and it did not assert that it was secured

by any lien against property.  Although 11 U.S.C. § 502(a) provides that a proof of claim filed

pursuant to § 501 "is deemed allowed, unless a party in interest . . . objects[,]" the Bank decided

not to wait to see if its claim would be objected to, but instead filed on July 27, 2009 a "Motion

to Allow Proof of Claim Filed by Wachovia Bank, National Association Based on Adjudication

Rendered by Circuit Court of Grayson County, Virginia" (hereafter "Motion to Allow")

asserting that this Court cannot review or set aside the Circuit Court's ruling on the underlying

confessed judgment pursuant to the *Rooker-Feldman*[2] doctrine.  The Debtor filed her response to

this Motion to Allow on August 21, 2009 and asked the Court to deny the Motion on the basis

that the *Rooker-Feldman* doctrine was not applicable as no final order was ever entered.

Wachovia filed its Reply Brief on September 22, 2009 again asserting that its Motion ought to be

granted on the grounds previously relied upon.  Wachovia further asserts that there is no dispute

that the Circuit Court actually adjudicated and denied the Debtor's motion to set aside the

confessed judgment; in short, the Debtor has had her opportunity to set aside the confessed

judgment and lost.  Therefore, the issue is not whether a written, final order was ever entered,

but whether there was an adjudication on the merits.  Based on its assertion that the Circuit Court

held that the confessed judgment would not be set aside, Wachovia argues that the judgment has

---

[2]  This doctrine was established by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

been rendered and cannot be set aside by this Court.

The Debtor filed an objection to Wachovia's Proof of Claim #7 on August 25, 2009 asserting that the debt was not incurred by the Debtor, but was incurred by a third party who stole the Debtor's identity.  On September 21, 2009, the Debtor filed an Amended Objection  asserting that she does not believe the claim is valid because it appears to include dates for which the statute of limitations had expired prior to the filing of the claim, that all of the payments made by her and Adams Grading have not been applied, and that the claim appears to be for notes that may have been paid.  Wachovia then filed a Motion "to Abstain Regarding Objection to Claim No. 7 and Response to Debtor's Objection to Claim in the Alternative" on September 24, 2009 asking the Court to abstain from adjudicating the Objection based on the doctrines of mandatory and discretionary abstention, and, in the alternative, incorporating the arguments made in its Motion to Allow Claim as its response to the Objection.  The Debtor initially scheduled the amended Objection for hearing on October 21, 2009.  By Order entered October 16, 2009, the hearing was continued to November 4, 2009 by agreement of counsel.  An evidentiary hearing was held on November 4 and the Debtor was ordered to file Memoranda of Authority by November 25, 2009 with Wachovia to file any reply brief by December 10, 2009. The matter was continued to December 14, 2009 for a further status conference.  On November 23, 2009, the Debtor filed her Motion for Summary Judgment and Memorandum in Support Thereof asserting that Wachovia's claim is barred by the statute of limitations.  On November 25, 2009, the Debtor filed a memorandum requesting that the Court deny Wachovia's request for abstention as Wachovia affirmatively invoked the jurisdiction of the Court, that mandatory abstention cannot be demanded as this is a "core" matter and that discretionary abstention is also

4

not appropriate.  Wachovia filed its response to these two motions on December 4 and December 7, respectively.  Wachovia first asserts that the Court should strike the Debtor's Motion for Summary Judgment pursuant to Rule 7012(f) of the Federal Rules of Bankruptcy Procedure as the Debtor was granted permission to brief the abstention issue only.  Wachovia further asserts that the Debtor has waived the statute of limitations defense as the Debtor has never raised the issue as an affirmative defense in any court proceeding.  Finally, Wachovia asserts that the Code section relied upon by the Debtor is not the applicable statute of limitations period and that the case law relied upon by the Debtor has been overruled.  In its brief regarding abstention, Wachovia asserts that the Debtor's arguments should be rejected as Wachovia has not waived the right to seek abstention, that mandatory abstention is proper and that discretionary abstention is also proper.  A status hearing was held on December 14 and the parties were directed by Order entered December 17, 2009 to file a Stipulation of facts and issues to be decided by January 13, 2010.  By that same Order, the Court denied Wachovia's motion for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).[3]

On January 13, 2010, Wachovia and the Debtor stipulated[4] that the documents attached to the Stipulation constitute a true and correct copy of the record of the Circuit Court of Grayson County proceeding and no order has been entered in that court vacating the confessed judgment which is the subject matter of the State court case.  They further agreed that no further

---

[3] In doing so the Court accepted the Debtor's contention that allowing or disallowing a claim against a bankruptcy estate is a "core" proceeding and that mandatory abstention is not applicable to core proceedings.

[4] "Stipulations of Fact filed by Wachovia Bank, National Association and Mary Adams," docket entry # 179.

5

evidentiary hearing was being requested "in support of the motions before the Court with regard to the allowance of" the Bank's proof of claim other than the issue of discretionary abstention, upon which the Debtor requested an oral hearing.

According to the Debtor's disclosure in her Statement of Financial Affairs, on October 1, 2008, while the confession of judgment proceeding was pending and within 90 days prior to filing her bankruptcy petition, the Debtor conveyed to her two children, reserving to herself a life estate, her residence property located in Grayson County, Virginia, valued at $170,100, but subject to two mortgage loans having a petition-date aggregate balance owing of $81,245.71, leaving equity of approximately $88,850.  Schedule A was amended in May 2009 to reflect a decreased value of $120,000 as compared to the value originally listed in January 2009, which would reduce equity to approximately $38,750.  It is not clear whether these property values reflected the fee simple value of such property or the present value of the Debtor's reserved life estate in it.  She also claimed that all household goods and furnishings located in such residence were the property of her daughter.  On May 14, 2009, the Debtor filed a proposed amended Chapter 13 Plan committing to make 60 monthly Plan payments of $800 per month for a total of $48,000 to be paid to the Trustee, purporting to provide a 15% payout to her unsecured creditors.[5]  The amount of non-priority unsecured debt listed in this Plan was $278,243.[6] Pursuant to paragraph four of the Plan, the Debtor represented that a Chapter 7 liquidation would result in a 10% payout to the unsecured creditors as compared to the 15% they would receive

---

[5]  The initial plan proposed by the Debtor provided for a 10% payout to her unsecured creditors.

[6] The Court is unable to reconcile this figure with the amount reported in the Debtor's schedules.

under the Plan.  How that 10% figure was derived is not apparent.  The Debtor also provided in

that Plan that she would pay directly the monthly payments due upon the mortgage loans

encumbering her residence property.  Her ability to do that, however, according to Schedules I

and J to her petition, is dependent upon voluntary contributions from her children totaling

$1,500.00 per month of her indicated total monthly income of $2,440.00.  Finally, in paragraph

eleven, the Debtor also provided notice to each creditor that there would be "extensive claim

litigation due to the theft of the Debtor's identity [and] a review of claims filed as of this date

indicate[s] most of the claims are not the Debtor's."  This Plan was confirmed by Order dated

July 17, 2009.  A little more than a month later the Debtor filed her Objection to the Bank's

claim at issue here.

        In January 2009 when this case first began, the Debtor originally listed a total of

$193,243.79 in unsecured non-priority debt in her Schedule F.  Of this amount, $70,663.38 was

marked as disputed.  Shortly thereafter, the Debtor also filed two notices of amendments to her

list of creditors listing five additional claims, four of which were marked as disputed.  In August

2009 the Debtor filed an objection to every proof of claim filed by a creditor in this case on the

basis that each debt "was not incurred by the Debtor but was incurred by a third party who stole

the Debtor's identity."  However, the objection to proof of claim # 7, the claim at issue here, was

subsequently amended, as referred to previously, and the objections to proofs of claim # 5 and #

6 (the secured claims of Wachovia) were later withdrawn.  In December 2009 the Debtor

amended Schedule F as the result of a contested hearing on one of the objections to reflect a total

of $115,850.79 in unsecured non-priority debt as compared to the amount originally scheduled

and to mark a number of originally undisputed debts as disputed.  By this amendment the Debtor

also modified the amounts of two claims, removed three claims, and added three claims as

compared with the originally filed Schedule F.  Pursuant to the amendment, the Debtor disputed

all but $7,306 of the $115,850.79 of unsecured non-priority debt listed in her Amended Schedule

F.[7]

       The claims bar date in this case was May 20, 2009 and nineteen claims were filed

for a total of $305,083.27.  Of this amount, seventeen claims aggregating $225,590.40 were filed

as unsecured and two claims totaling $79,492.87 were asserted to be secured.  The two secured

claims are for the first and second mortgage loans against the Debtor's residence property which

she proposes in her Plan to pay directly.  As already noted, previously filed objections to these

two claims have since been withdrawn.  Based on the objections to claims that have been filed

and sustained, that leaves only two claims still outstanding as possible claims against the funds

the Debtor has committed to pay to the Chapter 13 Trustee.  The Debtor has also filed objections

to these claims, the one at issue here in the amount of $108,127.06 and a claim of Roundup

Funding, LLC in the amount of $10,742.45.  What is the practical effect of all of this?  The

Debtor has obtained confirmation of a Plan under which she has agreed to pay $48,000 to the

Trustee for the benefit of her unsecured creditors, but all of the unsecured claims which have

been filed have either been already disallowed based on the Debtor's assertions of identity theft

---

[7] The three undisputed unsecured debts scheduled are one in the amount of $6,406 owing
to "Discover Financial S" for a credit card, having an account number ending in 9414, one in the
amount of $300 owing to Sam's Club, and one in the amount of $600 owing to GM Card/GM
Card-HSBC.  It bears noting that a proof of claim was filed by Discover Bank/DFS Services
LLC for an unsecured claim in the amount of $6,406.72, essentially the same amount listed in
the Debtor's amended Schedule F, but having an indicated account number ending in 2566.  The
Debtor likewise objected to this claim on the basis that it was the result of identity fraud.
Although validly served with this objection, Discover Bank failed to respond to it and this claim
as well was disallowed.

or are being vigorously contested by the Debtor.  If the Debtor were to be successful in these

efforts, there would be no timely claims eligible for payment under the terms of the confirmed

Plan.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  Allowance or disallowance of claims against the bankruptcy estate is

explicitly defined as a "core" bankruptcy proceeding by 28 U.S.C. § 157(b)(2)(B).

This dispute, unfortunately, has been made more convoluted and confusing than

was necessary.  Rather than simply await the claim objection procedure provided by the

Bankruptcy Code in § 502(a) that a filed claim is "deemed allowed" unless it is objected to, the

Bank decided to get the ball rolling early by crafting and filing a motion not expressly provided

for, and apparently not contemplated, by the Code, asking that its then not objected to claim be

allowed.  Although the claim which had been filed said nothing about any judgment, the motion

sought to have it allowed on the basis that the Debtor's liability on the debt had already been

determined by the Circuit Court of Grayson County, Virginia.  When the Debtor in due time did

file her Objection to the Bank's claim, the Bank responded by a Motion to Abstain.  Ms. Adams

thereafter filed a Motion for Summary Judgment based on the contention that the Bank's claim

was barred by the applicable Virginia statute of limitations.  To this Motion the Bank then

responded, contending essentially that any statute of limitations defense had been waived and

that in any event the Debtor was relying upon the wrong statute.[8]  The end result is that there are two parallel proceedings in this case seeking to determine the same outcome, i.e., whether the Bank's claim is going to be allowed or disallowed.

The particular issue now before the Court is whether it will determine on the merits the Bank's claim against Ms. Adams or whether it will abstain from doing so in favor of permitting the Circuit Court of Grayson County to complete the process in which it was engaged immediately prior to the filing of this case.  Counsel for the Debtor makes two basic arguments as to why this Court need not, and indeed ought not, abstain from determining the merits itself.  First, that the Bank by filing its Motion to Allow has affirmatively sought this Court's determination that its claim should be allowed and that such action is inconsistent with any idea of abstention.  Second, that under the authority of District Judge Kiser's opinion in *Huffman v. Perkinson (In re Harbour)*, 60 B.R. 370 (W.D. Va. 1985), this Court should not entertain a request that it abstain from determining a "core" proceeding, in this case, the allowance or disallowance of a claim against the bankruptcy estate.  The Court will deal with these contentions in turn.

---

[8] The Debtor relies upon Va. Code § 8.01- 246(2) and the cases of *Guth v. Hamlet Associates, Inc.*, 230 Va. 64, 334 S.E.2d 558 (1985) and *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076 (E.D. Va. 1994), for the proposition that the statute of limitations is five years and that it begins to run on a demand obligation and any guaranty of such obligation on the date of the instrument.  The Bank relies upon a subsequently enacted statute, Va. Code § 8.3A-118(b), which was adopted in 1992 and deals explicitly with demand notes, and a 2001 decision by the Supreme Court of Virginia, *McDonald v. National Enterprises, Inc.*, 262 Va. 184, 547 S.E.2d 204 (2001), which held that the statute of limitations upon a guaranty which according to its terms was payable "upon demand by the Lender, without notice other than such demand" runs from the date of demand for payment under the guaranty.

## FILING THE MOTION TO ALLOW

Debtor's counsel argues that Wachovia's filing the Motion to Allow seeks this Court's determination of the merits of its claim based on the state court proceeding as opposed to its later Motion to Abstain filed in response to the Debtor's Objection to its proof of claim. Counsel cites authority to the effect that a creditor's filing of pleadings in a bankruptcy court amounts to consent to its exercise of jurisdiction over the filer. There can be little serious doubt of the validity of this basic contention concerning effective consent to jurisdiction by the affirmative act of filing a pleading in the case, but that does not precisely address the issue in question here, which is one of the Court's exercise of its discretionary authority to abstain in deference to the Circuit Court of Grayson County. Simply the filing of the original proof of claim conferred jurisdiction on this Court to deal with the merits of the claim,[9] so the Bank's filing of its Motion does not confer any jurisdiction that did not already exist. The Motion to Allow includes the following allegations:

> 4. In November 2007, a hearing was commenced to consider the Debtor's motion to set aside the Confessed Judgment. At this hearing, the Debtor presented checks she claimed were payments made against the debts that were not credited properly. No adjudication was rendered because Wachovia agreed to investigate the payments. Wachovia asked for, and the Debtor agreed to provide, checks with numbers, dates, and amounts paid from 2001 through 2004. By December 2007, the Debtor produced nothing. Wachovia was forced to conduct discovery to get basic information, including checks, payment records, etc. When the Debtor failed to comply with discovery, Wachovia filed a motion *in limine* with the Circuit Court. The Debtor eventually produced all of the checks that she claimed supported her position. Wachovia researched the checks and

---

[9] Indeed the filing of such a claim also confers jurisdiction to determine a counterclaim arising out of the same transaction. *See Continental Casualty Co. v. White,* 269 F.2d 213, 215 (4th Cir. 1959).

11

concluded that all of the checks were applied properly – that the debt was still outstanding as demanded. Wachovia explained to the Debtor and her counsel how the investigation was conducted and why it believed the Debtor's conclusions were incorrect. The Debtor, however, rejected Wachovia's conclusion and continued to pursue the litigation to set  aside the Confessed Judgment. Wachovia then agreed to conduct a trial on the merits of the underlying claims rather than continue to waste time with the motion to set aside the Confessed Judgment. A trial was to commence in November 2008. . . .

5. At the trial on the merits in November 2008, the Debtor launched another surprise. Instead of prosecuting the motion that she has been pursuing for nearly a year, the Debtor announced surprisingly that she was obtaining new counsel and that she was seeking arbitration of the litigation pursuant to the debt instruments. The Circuit Court reluctantly allowed the Debtor to pursue arbitration. The Circuit Court, however, imposed limits on the arbitration. The Circuit Court permitted the Debtor to pursue arbitration provided that the arbitration was commenced by December 4, 2008.

6. The Debtor failed to commence arbitration by December 4. When Wachovia advised the Circuit Court that no arbitration was commenced timely, the Debtor filed an emergency motion to "cancel" the arbitration and to set a trial. Wachovia objected and requested that the motion to set aside the Confessed Judgment be denied. On December 23, 2008, the Circuit Court conducted an emergency hearing on the Debtor's motion. After oral arguments were heard, the Circuit Court denied the Debtor's motion. The Circuit Court further denied the Debtor's motion to set aside the Confessed Judgment. After the adjudication was rendered, a proposed order was circulated to memorialize the ruling. Unfortunately, the Debtor filed bankruptcy on January 2, 2009, staying all action in this case.

The Motion then goes on to request the following relief:

7. Wachovia requests the Court to allow its claim. Under 11 U.S.C. § 502, the Court should allow a claim unless it falls within the exceptions thereunder. The only applicable exception falls under § 502(b)(1) (claim is unenforceable against the debtor). However, the claim here has been adjudicated. The Circuit Court has held that the Confessed Judgment cannot be set aside and, consequently, the merits have been adjudicated with respect to Wachovia's claim. In other

12

words, the Debtor cannot prevail as a matter of law that the claim is unenforceable because that issue was adjudicated by the Circuit Court.

8. It is apparent that the Debtor will try to attack the adjudication of the Circuit Court in this Court. The law in this District, however, is that bankruptcy courts do not have subject matter jurisdiction under the _Rooker-Feldman_ doctrine to review or set aside judgments rendered by state courts under the disguise of an objection to claim. _Rooker v. Fidelity Trust Co._, 263 U.S. 413 (1923) and _District of Columbia Court of Appeals v. Feldman_, 460 U.S. 462 (1983) (holding that holds that federal courts other than the Supreme Court have no subject matter jurisdiction to sit in direct review of state court decisions unless Congress has enacted legislation that specifically authorized such relief).

There is a problem with this contention though. It is revealed by the Motion's language in paragraph # 8 that bankruptcy courts do not have jurisdiction "to review or set aside judgments rendered by state courts under the disguise of an objection to claim." At the time the Motion to Allow was filed the Debtor had not objected to the Bank's claim. As the Supreme Court explicitly held in the case of _Exxon Mobil Corp. v. Saudi Basic Industries Corp._, 544 U.S. 280, 284 (2005): "The _Rooker-Feldman_ doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." While it is true that the Bank correctly anticipated that the Debtor would object to its claim, that had not occurred when its Motion to Allow was filed. That's a little like kicking a dozing dog to find out if he will bite you. Put succinctly, the Court concludes that the Motion to Allow premised on the application of the _Rooker-Feldman_ doctrine was not well founded because at that time no objection to its claim had

been filed.[10]  Still, the question at this point is not whether the Motion to Allow was well founded, but whether its filing amounted to a waiver of any right thereafter to seek abstention.

Admittedly there does seem to be something of an inconsistency between the Bank's initially contending in its Motion to Allow that it had the benefit of a final ruling in the state court which "adjudicated"[11] the validity of the confessed judgment against Ms. Adams and its later contention in its Motion to Abstain that this Court ought to permit the Circuit Court to enter a final order denying the Debtor's motions in that court to (1) withdraw from arbitration and set a trial on the merits, and (2) set aside the confessed judgment.  The Debtor has not asserted, however, any basis in doctrines such as estoppel or inconsistent positions in pleadings as precluding the Bank's Motion to Abstain, but simply the filing of the Motion to Allow.  The Court concludes that the filing of the Motion itself sought nothing more than the allowance of the Bank's claim, which is in fact what the filing of a proof of claim itself sought.  Accordingly, it did not affect the Bank's right to ask this Court to abstain from determining the Debtor's Objection.

## DISCRETIONARY ABSTENTION AS TO CORE PROCEEDING

The *Harbour* case, *supra*, relied upon by the Debtor, involved actions brought by a bankruptcy debtor's trustee in bankruptcy to recover from a law firm payments of money which it received prior to bankruptcy from the debtor which the trustee contended were preferences and fraudulent conveyances.  The law firm filed a motion to abstain and a demand for a jury trial and

---

[10] Although the Debtor had listed the Bank's claim as "disputed" in Schedule F, that does not constitute an automatic objection to its claim overriding the provisions of 11 U.S.C. § 502(a) and Bankruptcy Rule 3007 requiring the filing of an objection to a claim which otherwise will be "deemed allowed."

[11] See paragraph # 7 of the Motion quoted above.

asserted that the claims involved state law and should be resolved in state court.  There is no

indication in the opinion that there was any pending state court proceeding at the time the trustee

filed his adversary proceeding in the bankruptcy court.  Judge Kiser first held that mandatory

abstention was not available because the trustee's claims constituted "core" proceedings.  60 B.R

at 371.  He next ruled that discretionary abstention was applicable to both "core proceedings as

well as related matters."  *Id.*  Finally, he ruled that while it was within his "discretion to abstain in

this matter[,]" he concluded that the trustee's claims "are equitable actions which should remain

within the Bankruptcy Court for resolution."  60 B.R. at 372.  There are marked differences

between the dispute before this Court and the one presented to the District Court in *Harbour*.  The

claims asserted by the bankruptcy trustee in *Harbour* were based both in the Bankruptcy Code in

sections 547 and 548 and the Code of Virginia in section 55-81.  60 B.R. at 371.  As such, they

were in part claims arising under the Bankruptcy Code and with respect to which bankruptcy

courts have considerable experience and presumed expertise.  In this case the dispute as to

whether Ms. Adams is liable to the Bank for any amount, and if so, how much, is one which is

governed exclusively by Virginia law.  The claims in *Harbour* were equitable ones for recovery

of sums previously paid while the Bank's claim against Ms. Adams is purely one at law.  In this

case there was a state court action pending, and apparently near final resolution, at the time the

bankruptcy petition was filed, while no such indication appears in the *Harbour* opinion.  The

Court concludes that these differences are critical and make this case clearly distinguishable from

the *Harbour* holding.  Accordingly, the fact that the Bank's claim against the Debtor is a "core"

proceeding does not preclude this Court's exercise of discretion with respect to the request that it

abstain.  Therefore, the Court will next examine upon what principles its exercise of discretion

15

ought to be decided.

TWELVE FACTOR TEST FOR DETERMINATION OF DISCRETIONARY ABSTENTION

Counsel for the Debtor has cited to the Court the decision of *Taub v. Hershkovitz (In re Taub)*, 417 B.R. 186, 191-92 (Bankr. E.D.N.Y. 2009) as providing a twelve factor test intended to inform bankruptcy courts upon the exercise of its discretion to abstain when requested to do so pursuant to 11 U.S.C. § 1334(c)(1). The same factors were utilized by Judge Anderson of this Court in an unpublished 2006 decision. *See Colonial Mart of Danville v. Hawker (In re Hawker)*, Case No. 06-61153, Adv. No. 06-06100, at 4 (Bankr. W.D. Va. Dec. 8, 2006), *available at* http://www.vawb.uscourts.gov/Opinions/opinions. asp, *citing Eastport Assoc. v. City of Los Angeles*, 935 F.2d 1071, 1075 (9th Cir. 1991) *citing Christianson v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990); *Fidelity National Title Insurance Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 928 (Bankr. E.D. Cal. 1995); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987). Counsel for the Bank has cited Judge Anderson's *Colonial Mart* decision utilizing the same factors. Each party asserts that a weighing of the factors favors itself or herself. The Court notes that Bankruptcy Chief Judge Tice of the Eastern District of Virginia employed a somewhat different twelve factor test in the case of *Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003), which was later followed by Bankruptcy Judge St. John of the same court in the case of *In re Bay Vista of Virginia, Inc*., 394 B.R. 820, 845 (Bankr. E.D. Va. 2008). Because counsel for the parties agree upon the use of the factors applied in the *Taub* and *Colonial Mart* decisions, they will be the ones relied upon here as well.

16

The first factor is the impact on the efficient administration of the bankruptcy estate. In the circumstances present here this factor is a difficult one to assess. It is not clear how much this factor is independent from the ninth factor, discussed below, dealing with the burden on the bankruptcy court's docket. If the action of the Circuit Court were to be limited to entry of a final order ruling against the Debtor's motions in that court, as counsel for the Bank contends, and with no further proceedings in the state court system, abstaining in favor of that court would not be likely to have any material adverse impact upon the administration of the estate. On the other hand, if that court were to determine, on further reflection, for example, that the defendant's aborted attempt to seek arbitration should not preclude her from a trial on the merits of her claims of payment or having a plea of the statute of limitations heard, or if an appeal were undertaken from a final judgment order of that court, the delay in determining the claims against the bankruptcy estate could be substantial. While the Trustee has not been asked by either party to speak to this issue, it seems likely that she would be obliged to make distribution on allowed undisputed claims, if any, on the assumption that the Bank's relatively very large claim may ultimately be allowed and not be able to make a final determination of creditors' claims against the estate until final adjudication of these claims has occurred in whichever forum. Of course even if this Court declines to abstain, an appeal of its determination of the allowed amount, if any, of the Bank's claim would likewise delay the final resolution of the matter until the appellate process had been completed. As previously noted, there are at present no allowed unsecured claims against the estate and both of the unresolved unsecured claims which are potential charges against the estate are subject to contests yet to be resolved. Accordingly, the Court concludes that under these circumstances this factor is not helpful in informing the Court in the exercise of its

17

discretion and therefore will disregard it.

The second factor is the extent to which state or federal law predominates over bankruptcy issues. In this case the determination of the Bank's claim against the Debtor under her guaranty for loans to her corporation is governed entirely by non-bankruptcy law, apparently exclusively Virginia common and statutory law. This factor weighs in favor of abstention.

The third factor is the difficulty or unsettled nature of the applicable law. The parties disagree on the applicable statute of limitations and whether it has been waived or not. The Debtor did raise the issue of statute of limitations in her amended Objection to the Bank's proof of claim, but she did not raise the issue in the confession of judgment proceeding in the Circuit Court of Grayson County.[12]   The Court concludes that Va. Code § 8.3A-118(b), which explicitly establishes a specific statute of limitations for demand notes, whether negotiable or non-negotiable, is the correct statute with respect to an action upon the two notes. That subsection of the statute provides as follows:

> (b) Except as otherwise provided in subsection (d) or (e), if demand for payment is made to the maker of the note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years.

Va. Code § 8.3-103(8) defines "party" to mean "a party to an instrument." Judge Krumm of this Court held in the case of *First American Bank of Virginia v. Leake (In re Colbert)*, 128 B.R. 734, 736 (Bankr. W.D. Va. 1991) that a separate guaranty is not a negotiable instrument and therefore

---

[12] Her motion to set aside the confessed judgment did expressly deny that she was "indebted to" or "owed" the Bank "any sum of money" and further reserved "any and all other grounds for defense, defenses, and setoffs."

the signer of such a guaranty is not a "party to an instrument."  Accordingly, although admittedly

it seems illogical, it appears that § 8.3A-118(b) may not be the applicable statute of limitations to

an action against Ms. Adams upon her guaranty.  The Supreme Court of Virginia's 2001 decision

in *McDonald, supra* at footnote # 8 of this Decision, held that the statute of limitations upon a

guaranty which according to its terms was payable "upon demand by the Lender, without notice

other than such demand" runs from the date of demand for payment under the guaranty.  The

guaranty in this case, however, was one in which Ms. Adams guaranteed "the timely payment and

performance of all liabilities and obligations of Borrower to Bank" and expressly waived any

obligation on the part of the Bank to make any demand upon the Borrower (i.e., Adams Grading)

"or other persons or entities" for payment as well as "notice of default . . . and all other notices of

any kind whatsoever[.]"  In short, this was a guaranty of timely payment, not collection, and no

demand upon Ms. Adams under the guaranty appears to have been necessary to trigger her

obligation to pay.  Accordingly, the guaranty signed by Ms. Adams appears to be much more like

the guaranty considered in the *Guth* decision, *supra* at footnote # 8, relied upon by the Debtor

than the one at issue in *McDonald*.  This Court is not aware of any Virginia authority which has

considered whether the statute of limitations upon a separate guaranty of a note could expire prior

to the holder's right to enforce payment from the maker of the note.  Accordingly, this Court

concludes that the law of Virginia regarding the applicable statute of limitations for a guaranty

and when it begins to run is unsettled for a guaranty of the kind signed by Ms. Adams.[13]  The

remaining issue raised by the Debtor in her Objection to the Bank's claim is possible prior

---

[13] "This Court has recognized that the statute of limitations on a guaranty may or may not
start to run at the same time as that on the underlying obligation."  *McDonald,* 262 Va. at 192,
547 S.E.2d at 209.

payment by the corporate obligor or otherwise of the loans upon which the Debtor's liability is

based.  This is an evidentiary issue, not a question of discerning applicable law.  Accordingly, the

Court concludes that the law as to whether **on the merits** Ms. Adams is liable to the Bank is not

unsettled at all.  It further concludes that under the circumstances presented here, where the

unsettled nature of the law on the statute of limitations issue might not even be addressed by the

Virginia court on the ground of waiver, this factor is not one which ought to be taken into account

on the question of whether or not this Court ought to abstain from deciding the Bank's claim.

The fourth factor is the presence of a related proceeding in state court or another

bankruptcy court.  Here there is a state court proceeding filed for the particular purpose of

obtaining a court adjudication of the Debtor's liability upon her guaranty in favor of the Bank.

Furthermore, that proceeding had been pending for approximately seventeen months when this

bankruptcy case was filed and, according to the representations of Bank's counsel, was on the

verge of entry of a final order at the time of such filing.  This factor weighs in favor of abstention.

The fifth factor is whether there is another basis for federal jurisdiction other than

28 U.S.C. § 1334.  Counsel for the Debtor suggests that 28 U.S.C. § 157 furnishes a separate

basis for jurisdiction.  This statute, however, deals with the concept of "core" bankruptcy matters

and the allocation of authority between district courts and bankruptcy courts.  It is not an

independent basis for federal jurisdiction.  The Debtor has not suggested any other basis for

federal jurisdiction of the dispute between the Bank and the Debtor other than bankruptcy

jurisdiction.  Therefore,  this factor weighs in favor of abstention.

The sixth factor, described in *Taub,* 417 B.R. at 194,  as "the degree of relatedness

or remoteness of the proceeding to the main bankruptcy case,"[14] and characterized in *Colonial*

*Mart* as "the legal proximity of the instant case to the parent proceeding," would appear to weigh

against abstention in this case.  The issue of the allowance of the Bank's claim against the Debtor

and her bankruptcy estate is a "core" proceeding and therefore not in any way remote or unrelated

to the bankruptcy case.

The seventh factor is the Court's consideration of the substance, rather than the

form, of an asserted core proceeding.  There is no dispute here that the determination of the

Bank's claim against the Debtor and therefore her bankruptcy estate is a core proceeding.  Under

the circumstances presented here, this factor is not helpful to the Court in exercising its discretion

and therefore will be disregarded.

The eighth factor is the "feasibility of severing state law claims from core

bankruptcy matters to allow judgments to be entered in state court with enforcement left to the

bankruptcy court." *Taub, supra*, at 196.  The Ninth Circuit Court of Appeals in the *Tucson Estates*

case, *supra*, in discussing the provision of 28 U.S.C. § 157(b)(2)(B) defining the "allowance or

disallowance of claims against the estate" as a "core" bankruptcy matter, drew a distinction

between "the tasks of determining whether the [plaintiffs] have a claim, and determining what to

do with it in bankruptcy if they do."  912 F.2d at 1168.  Without intending to adopt or even

endorse that exact analysis here, its general thrust is to recognize that bankruptcy courts ought to

strive to avoid rulings leading to inconsistent results between state and federal courts, which is

certainly akin to the *Rooker-Feldman* doctrine brought forward by the Bank here.  Similarly this

concept is also in keeping with the underlying rationale of 28 U.S.C. §1334(c)(1) authorizing

---

[14] *Accord, In re Pacific Gas & Elec. Co.*, 279 B.R. 561, 571 (Bankr. N.D. Cal. 2002).

district, and therefore derivatively bankruptcy, courts to abstain in "the interest of comity with

State courts." The Court concludes that it will not be difficult in this case to separate the state law

issues involving the merits of the Bank's claim against the Debtor from the determination of the

amount owing upon such claim as of the filing date, which defines the claim allowable in the

bankruptcy case. The Bank has filed its claim in this case as an unsecured creditor and the

confirmation order is binding upon it as well as the Debtor. Accordingly, its rights will be limited

to its pro rata share of the net distribution by the Chapter 13 Trustee of the funds paid to her in

accordance with the provisions of the confirmed plan. Therefore, the Court concludes that this

factor weighs in favor of abstention.

The ninth factor is the Court's consideration of the burden on its docket. The Court

concludes that its determination of the Bank's proof of claim will not significantly burden its

docket or that its abstention would have any appreciable effect upon its ability to decide other

matters now pending on its docket. This factor weighs against abstention.

The tenth factor is the consideration of the likelihood that removal of the matter

was forum shopping. In the context of this case the issue is whether the bankruptcy filing itself

amounted to forum shopping. Although the Debtor has not been questioned about why she filed

her bankruptcy petition when she did, there is no indication in the Statement of Financial Affairs

of any financial emergency, such as a garnishment of her bank account or other property, which

precipitated her filing. In light of the allegations contained in the Motion to Allow concerning the

outcome of the December 23rd hearing in the Circuit Court of Grayson County amounting to a

complete rejection of her motions, followed by her bankruptcy filing ten days later, it is difficult

as a practical matter not to surmise that those two events are closely linked and that she wished to

avoid a final determination of her liability in the state court.  The Court concludes that this factor

is applicable and that it weighs in favor of abstention.

The eleventh factor is the existence of a right of a jury trial.  In this case the notes

and the guaranty agreement provided for a waiver of the right to a jury trial by reason of agreeing

to binding arbitration.  Whatever might have been the case if neither party had demanded

arbitration, it seems clear that the Circuit Court of Grayson County deemed the Debtor's demand

for arbitration more than a year after judgment had been confessed as a waiver of any right

thereafter to seek a jury trial.  This Court sees it the same way.  Accordingly, this factor is not

pertinent to the Court's ruling.

Finally, the twelfth factor is the Court's consideration of the presence in the

proceeding of non-debtor parties.  The only parties to the state court action were the Bank and

Ms. Adams.  Accordingly, there are no interests of non-debtor parties which ought to be

considered.  The parties agree that this factor is not pertinent to the Court's decision

A summary of the preceding discussion is that five of the twelve factors are not

applicable to the present dispute or have been disregarded for reasons already noted, two of such

factors weigh against abstention, and five of them weigh in favor of abstention.  As both *Taub*

and *Colonial Mart* make clear, however, the result of this test is not determined simply by a

mathematical calculation of the number of factors falling in the various categories with the winner

determined by the largest score.  As Judge Anderson stated in *Colonial Mart*, "the exercise is one

of legal analysis, not accounting."  Case No. 06-61153, Adv. No. 06-06100 at 5.  *See also Fidelity*

*Nat'l Title Ins. Co.,* 179 B.R. at 928.  The Court concludes after considerable deliberation that the

proper balance to be struck here is in favor of abstention so as to allow the Circuit Court of

23

Grayson County to be able to conclude the litigation which was before it for over a year before the Debtor filed in this Court.  What weighs probably most heavily in the Court's thinking is the stage which that litigation had reached when this Court's jurisdiction intervened. The pleadings and orders contained in the state Court's file substantiate the Bank's contentions that Ms. Adams had never succeeded in persuading it that she had a valid fact-based defense to the judgment confessed against her.  They also provide a basis for this Court to make the inference from the evidence that the motivating cause of the Debtor filing her bankruptcy petition when she did was to avoid an unpalatable litigation outcome in state court.  While the burden of litigation can certainly be an acceptable reason that one might be forced or choose to file bankruptcy, waiting to see how a law suit is going to come out and then filing a petition to prevent an unwelcome result is not something which bankruptcy courts ought to encourage or condone because it frustrates the proper functioning of the state court system and invites re-litigation of matters already dealt with there.  The Fourth Circuit Court of Appeals held in the non-bankruptcy case of *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000) that "*Rooker-Feldman* also applies to interlocutory orders issued by state courts."[15]  Furthermore, it is an unfortunate fact of bankruptcy life that a distressingly large share of chapter 13 cases having confirmed plans are not being completed successfully and end up being dismissed, thereby generally returning the creditors and the bankruptcy debtor to their pre-bankruptcy rights.  If that were to occur in this case, it strikes the Court that it would be preferable for the proceedings in the Circuit Court of Grayson County to be completed in the near future rather than some months or years down the road.  For these

---

[15] The Court also cited with evident approval the statement made in the case of *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) that "*Rooker-Feldman* . . . does not depend on a final judgment on the merits."

24

reasons the Court will grant the Bank's Motion to Abstain for reasons of comity with Virginia courts and will enter an order to such effect and modifying the automatic stay to permit the Bank to proceed in the Circuit Court of Grayson County to obtain a final determination of the issue of the Debtor's liability under state law to the Bank upon the former's guaranty of the obligations of Adams Grading and Trucking, Inc. to such bank, but not extending to enforcement of any final judgment against the Debtor or the creation or enforcement of any lien upon her property.

Decided this 1st day of March, 2010.

_William F. Stone, Jr._

_____

UNITED STATES BANKRUPTCY JUDGE