IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MARY ADAMS | ) | CASE NO. 09-70001 |
| | ) | |
| Debtor. | ) | DEBTOR'S COUNSEL'S APPLICATION |
| | ) | FOR COMPENSATION |

**MEMORANDUM DECISION**

The matter before the Court is the Application for Compensation[1] (the "Application") filed by counsel for the Debtor, Copeland & Bieger, P.C. (the "Firm"), in the amount of $6,335 to which objections have been filed by the United States Trustee[2] and Wells Fargo Bank.[3] In addition to these objections, the Chapter 13 Trustee spoke against the Application at the hearing upon it on November 16, 2011. The Application is composed of two principal components, a request for $750 as compensation for services relating to objections to all claims other than the claims of Wells Fargo Bank, successor to Wachovia Bank, N.A., and $5,585 for services[4] related to extensive litigation with respect to a Wells Fargo claim which had been the subject of pre-petition confession of judgment proceeding brought by the bank against Ms. Adams in the Circuit Court of the County of Grayson, Virginia, which ultimately was resolved in Wells Fargo's favor. None of the opposing parties objects to the $750 component

---

[1] Docket entry # 253.

[2] Docket entry # 256.

[3] Docket entry # 258.

[4] Included in that amount is a request for reimbursement of $65 for automobile mileage for Mr. Copeland to attend a hearing in the Circuit Court of Grayson County.

but all dispute the $5,585 claim with regard to the Wells Fargo litigation. To evaluate the contentions of the parties requires some review of the history of this case, which was filed on January 2, 2009 and has now been pending for almost three years.

The precipitating cause for the Debtor's bankruptcy filing appears to have been the confession of judgment proceeding because it followed very quickly after a hearing in the Circuit Court of Grayson County at the conclusion of which that court apparently indicated that Ms. Adams's arguments against the confessed judgment were being rejected and that it would enter an order upholding the confessed judgment. This case was commenced, however, before any such order was entered.

As a part of the bankruptcy filing the Firm filed the Disclosure of Compensation of Attorney for Debtor required by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure which stated that it had agreed to accept $3,000 for its services in the case, excluding services related to "discharge, dischargeability, 707(b) and debtor audits." Of this amount $1,500 had been received prior to filing, with the remaining balance "to be paid through the Chapter 13 Plan, however additional fees may be applied for due to expected litigation." The Debtor filed an amended Chapter 13 Plan on May 14, 2009 which advised that the Debtor would pay a total sum of $48,000 into the Plan but that the amount of attorney's fees was undetermined because "extensive" claim litigation was expected. The Plan also advised that counsel's billing rate was $250 per hour.[5] Due to the uncertainty as to the possible effect of this aspect of the Plan the Chapter 13 Trustee undertook to provide some protection to the unsecured creditors who would

---

[5] Mr. Copeland's time entries in the Application have actually been billed at a lower rate of $225, which he represents was his billing rate at the time the case was filed. None of the objecting parties has criticized the Application on this ground.

bear the burden of the legal fees by negotiating with Robert T. Copeland, Esq. on behalf of the Firm a fee cap agreement which provided that the Firm's "total fees for . . . work done in preparing and litigating all objections, except the claim of Wachovia Bank, at $750.00 . . . [and that] total fees in the case will be limited, so as to provide a net dividend to unsecured creditors of not less than 15%." An Order incorporating this agreement was entered on June 30, 2009 and was noticed to all creditors with an opportunity to object. No objection was filed and the Order's provisions were incorporated into this Court's July 17, 2009 Order confirming the Plan. That confirmation order specifically provided with respect to fees for Debtor's counsel as follows: "atty fees shall be capped at a total amount of $750.00 for work done in this case regarding all claim objections with the exception of litigation of the claim of Wachovia. Counsel's total fees regarding all other matters and litigation of Wachovia's claim shall be limited to provide that unsecured creditors receive a dividend of no less than 15%." The total compensation so limited would be reduced by the $1,500 in compensation already received pre-petition by the Firm from the Debtor. The Application asserts that all of the litigation has been concluded and that "the creditors have already received close to 20% of their claims." These contentions do not appear to be disputed by the parties opposing the Application.

## CONTENTIONS OF THE PARTIES

The United States Trustee filed on November 9, 2011 a Limited Objection to Application for Compensation Filed by Counsel for the Debtor, objecting to the requested compensation of $5,585 arising from the litigation surrounding the Wachovia claim. According to the United States Trustee, the decision from Grayson County Circuit Court was all but

finalized just prior to the Debtor's voluntary petition on January 2, 2009, and could have been completed despite the intervening bankruptcy case.  In the opinion of the United States Trustee, the ensuing litigation by counsel for the Debtor concerning Wells Fargo's claim did not benefit the Debtor, was futile from the outset, and only caused delay in the bankruptcy case.  The United States Trustee argues that none of the fees sought in relation to this litigation are reasonable under 11 U.S.C. § 330(a)(4)(B), or in the alternative, that the amount of time spent on the litigation is excessive given the circumstances of the case.  In the case of the latter, the United States Trustee suggests that one hour is the appropriate amount of time that counsel should have spent reviewing the matter before deciding not to pursue it further.  At the November 16, 2011 hearing, counsel for the United States Trustee reiterated his position, and also argued that counsel for the Debtor should demonstrate the legitimacy of the litigation and the fees arising therefrom.

A similar objection also came from Wells Fargo, which filed its Objection to Application for Compensation Filed by Copeland & Bieger, P.C. on November 9, 2011.  The essential argument mirrors that of the United States Trustee:  that the services rendered in connection with litigation surrounding Wachovia's claim have not been shown to be necessary or beneficial, and thus the compensation of $5,585 should not be allowed.  Wells Fargo also cites § 330(a)(4) for the proposition that reasonable compensation may be awarded to counsel for a debtor where such services were necessary and beneficial to the debtor.  According to Wells Fargo, counsel for the Debtor brought repetitive litigation that was not reasonably likely to benefit the Debtor.  Furthermore, as the bank's claim remains in place, Wells Fargo adds that the time spent by counsel did in fact not benefit the estate.  Finally, Wells Fargo asserts that

allowing compensation in this situation would give counsel for the Debtor priority over the claim of Wells Fargo even though such compensation is based upon an unsuccessful attempt to disallow the bank's claim. At the November 16 hearing, counsel for Wells Fargo emphasized that the risk of the litigation in Grayson County Circuit Court should not fall on its shoulders, and that awarding compensation to counsel for the Debtor would accomplish precisely that. Acknowledging that the matter did warrant some preliminary consideration by counsel for the Debtor, counsel for Wells Fargo nevertheless insisted that by subordinating the bank's claim to attorney's fees arising from an unsuccessful attempt to disallow that claim, the Court would be placing the risk of such litigation on the creditors being attacked and as such promoting potentially unfounded litigation.

Counsel for the Debtor responded to these arguments at the November 16 hearing, referring again to the provisions for attorney's fees in the July 17, 2009 Order Confirming the Plan. Counsel argued that by ensuring that unsecured creditors received at minimum a 15% payout, the Court had already dealt with the risk of litigation and had protected the creditors' interests. Counsel also defended the litigation on Wells Fargo's claim, stating that a successful challenge would have provided a 100% dividend upon allowed unsecured claims and that the Grayson County Circuit Court never actually reached the merits of the case. Finally, counsel for the Debtor noted that this Application actually reflected reduced charges as the Firm did not bill for all of the services that counsel had in fact rendered for the Debtor.

The Court has requested that the Firm file with the Court a copy of its engagement agreement with the Debtor but has been advised by it that neither it or the client can find a copy of such an agreement. It is unclear whether there was an agreement which has been

misplaced or that no such written contract was ever made. In either case the Firm takes the position that the disclosures in the Plan and the language of the order confirming the Plan are the law of the case with respect to the Firm's compensation.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The determination of allowed compensation to a Chapter 13 bankruptcy debtor's counsel pursuant to 11 U.S.C. § 330(a)(4)(B) is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). *See Harman v. Levin (In re Robertson)*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985). Because the Application seeks compensation which is payable from the estate, it is also a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

Section 330(a)(4)(B) provides that the court "may allow reasonable compensation" to counsel for a Chapter 12 or 13 debtor "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." The "other factors" referenced are contained in § 330(a)(3), which reads as follows:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

6

>   (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
>   (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
>   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

In addition, bankruptcy courts "shall not allow compensation" for services involving "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). These prohibitions just enumerated, however, are subordinate to the authority in subsection § 330(a)(4)(B) previously noted permitting the Court to compensate debtor's counsel in Chapter 12 and 13 cases "based on a consideration of the benefit and necessity of such services to the debtor[.]"

    Legal authority is quite consistent and this Court has repeatedly held that the burden is "upon the Debtor's counsel to prove that the services were actually rendered, reasonable and necessary." *See In re Travis*, No. 08-71735, slip op. at 5-6 (Bankr. W.D. Va. Jan 19, 2011); *In re Horne*, No. 04-01065, slip op. at 6 (Bankr. W.D. Va. July 12, 2006) (citing Hon. Barry Russell, *Bankruptcy Evidence Manual* § 301.41, at 821 (2006 ed.))[6]; *In re C & J Oil Co.*, 81 B.R. 398, 403 (Bankr. W.D. Va. 1987) (Krumm, J.); *see also Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enterprises, Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999)

---

[6] The current citation to this treatise authority is 2 Hon. Barry Russell, *Bankruptcy Evidence Manual* § 301:41, at 264 (2010-11 ed.).

7

(holding that one who seeks allowance of an administrative expense has the burden of proving entitlement to same). Determination of the necessity and benefit of the services rendered is not to be made with the benefit of hindsight, but rather "at the time at which the service was rendered [.]" § 330(a)(3)(C). *See* 3 *Collier on Bankruptcy* ¶ 330.03[1][b][iii] at p. 330-25 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

## DECISION

Each side has some good arguments in its favor in evaluating the necessity and benefit of the Firm's services rendered in this case with respect to the Wells Fargo litigation claim. From the bank's position, it apparently had obtained an oral ruling in its favor denying Ms. Adams's efforts to set aside the confession of judgment in the Circuit Court of Grayson County just before this bankruptcy case was commenced. Once that occurred, rather than simply accepting the confessed judgment as a final determination of the Debtor's liability to Wells Fargo, the Firm mounted a long and ultimately futile battle to obtain a full hearing upon all of the Debtor's purported defenses to the bank's claim. From the latter's perspective such efforts represented an expensive and pointless exercise which ought not to be condoned or compensated by this Court. On the other hand, the Firm, once it had agreed to represent Ms. Adams in a Chapter 13 bankruptcy proceeding, was presented with a client who vehemently denied liability to Wells Fargo on the merits and who had no interest in conceding her liability to such creditor. The Firm had not been involved in the state court litigation which preceded the bankruptcy filing and had to determine whether its client's purported defenses might yet be heard on the merits. Undoubtedly, Ms. Adams's pre-bankruptcy tactics associated with the Grayson County litigation

had proved irritating, to put it mildly, to that court, Wells Fargo and its counsel, and her own attorneys as well, but even so, there was some basis for a perception on her part that she was being punished by that court for seeking arbitration on the eve of trial and then later withdrawing from it when the cost of that alternative procedure proved more than she could afford, thereby being denied an opportunity for a full hearing on whether she was actually legally liable to the bank. While this history does not depict the Debtor in a flattering light, that does not necessarily mean that as a result she had forfeited any further right to vigorous representation. In evaluating the circumstances presented in this case, the Court cannot help but recall that one of the more noteworthy cases filed with it in recent memory involved a very substantial corporation which commenced a Chapter 11 case here, after being on the wrong side of a multi-million dollar jury verdict in state court litigation, before presenting its arguments to the state court as to why judgment ought not to be entered against it upon such verdict. That case ultimately resulted in an agreement between the bankruptcy debtor and the state court plaintiff which provided the foundation for a consensual plan of reorganization. *See In re Luna Innovations, Inc*., No. 09-71811. If memory serves correctly, the law firms representing the debtor in that bankruptcy case received compensation approved by this Court exceeding one million dollars.

In evaluating the reasonableness of the scope of legal services rendered by the Firm in connection with the Wells Fargo litigation, its decisions must be reviewed in light of the bank's own approach to the presentation of its claim in this bankruptcy case. The proof of claim which it filed was based not on the confessed judgment in the Circuit Court of Grayson County but on the underlying contracts upon which the state court litigation had been based. Rather than rely upon the procedures provided by the Bankruptcy Code and Rules contemplating allowance

of a creditor's claim unless it is objected to, Wells Fargo decided to set its own course by filing on July 27, 2009 a peremptory motion to allow its claim to which at that point no objection had been made.[7] It wasn't until September 24, 2009 that the bank filed a Motion to Abstain in connection with the Debtor's objection to the former's proof of claim which requested this Court to permit the Circuit Court of Grayson County to conclude the confession of judgment litigation in that court. This course of events opened the door for the Debtor to argue, albeit unsuccessfully, that the bank's action in filing the initial motion to allow its claim constituted a voluntary submission on its part to the Bankruptcy Court's determination of the Debtor's liability on the merits independent of the pre-bankruptcy state court litigation. Although this argument was not accepted, it was not frivolous when asserted. Furthermore, the Firm's assertion that the confession of judgment upon Ms. Adams's guaranty of a corporate debt was subject to a plea of the statute of limitations was also not frivolous even though its merit remains uncertain. From the account provided to this Court, it appears that the Circuit Court of Grayson County ruled that the plea came too late and would not be considered at the hearing which took place after this Court granted the bank's Motion to Abstain.

        The Court concludes that the terms of the June 30, 2009 Order which were incorporated into the confirmation order, neither of which was objected to at the time or challenged at any time since, do establish the law of the case with respect to permissible compensation for the Firm's services in this case. That conclusion does not by any means, however, preclude any party in interest from objecting to the Application upon any basis

---

[7] For a more detailed account of this history, reference is made to the Court's Memorandum Decision dated March 1, 2010 in this case, docket entry # 195.

founded on the provisions of § 330. The Court concludes that the ultimate failure of the Firm's efforts to defeat Wells Fargo's claim and that such efforts ultimately were of no benefit to either its client or the bankruptcy estate is not a sufficient reason to deny it compensation for those services. If such efforts had been successful, it appears that any allowed claim against the estate would have been paid in full. While the Firm's judgment in attempting to defeat Wells Fargo's claim against the Debtor no doubt will remain a subject of decided disagreement between those parties, the Court concludes that in close cases, and this one certainly is, the Court should come down on the side of allowing reasonable compensation to Chapter 13 debtors' attorneys which will enable such debtors to have representation which is as vigorous and capable as that available to their creditors.

While the Court can appreciate Wells Fargo's perception of injustice that this ruling means that it has borne not only the legal fees of its own attorneys in the lengthy and bitter contest with Ms. Adams but also in large part the fees of the latter's bankruptcy counsel, such result is the consequence of two factors aside from the simple extent of the litigation of its claim: (I) the statutory framework provided by the Bankruptcy Code for Chapter 13 cases which treats the compensation of debtors' counsel as administrative expenses of the case entitled to priority over the claims of general creditors, and (ii) the size of its claim against the bankruptcy estate in relation to the total of allowed unsecured claims which results in the bank in effect bearing most of the administrative expenses of the case, including those relating to the litigation of its own claim. While such a system may as a practical matter offer an encouragement to aggressive litigation by Chapter 13 debtors' counsel, a counterweight is provided by the Code's provisions enabling creditors to oppose confirmation of a plan, seek dismissal of a case as having been filed

in bad faith, or to attempt to obtain a monetary sanction against a debtor's attorney filing unwarranted pleadings pursuant to the provisions of Bankruptcy Rule 9011.

This Court has reviewed the time entries supporting the Application and concludes that they are reasonable and will therefore approve the compensation sought by the Firm but with the following reductions:

1. The Firm originally objected to Claim # 7 filed by Wells Fargo for the same liability represented by the confession of judgment litigation on the basis that it was the product of identity theft. When this was immediately challenged by the bank's counsel, the Firm acknowledged that the objection on that ground was without merit and promptly filed an amended objection. The Firm did not exercise proper review of the original objection before filing a pleading asserting the unsupported contention and its compensation will be reduced by $250 as a sanction for its lack of care.

2. The Firm also filed an objection to a claim filed by Discover Bank and upon the latter's default obtained an order sustaining such objection on the ground of identity theft although the Debtor's schedules admitted an undisputed debt to Discover Card in almost the exact amount set forth in the proof of claim. Although such discrepancy came later to the Court's attention and was specifically mentioned[8] in this Court's March 1, 2010 Memorandum Decision in this case, counsel for the Debtor took no apparent action thereafter to make any inquiry as to whether the Firm had filed a false pleading and unjustly obtained the disallowance of a creditor's valid proof of claim in this case, until receiving this Court's request for comment

---

[8] Slip op. at 8, fn 7.

in connection with its consideration of this Application.[9] To have such a matter brought to counsel's attention by specific reference in such Memorandum Decision and then for such counsel to fail to take any indicated steps before further prompting by the Court to determine whether its actions had resulted in the wrongful disallowance of a valid claim is very troubling to this Court. One of its most fundamental expectations of counsel, who are considered officers of the Court, is that they will not seek without good cause based in fact or law or both to disallow the valid claim of a creditor. *See In re Gary M. Bowman, Esq.*, Misc. Proc. No. 07-00701 (Bankr. W.D. Va. March 31, 2008), aff'd 2010 U.S. Dist. LEXIS 62004 (W.D. Va. June 21, 2010). When it is brought to counsel's attention that a wrongful disallowance of a creditor's claim may have resulted from such counsel's failure of proper oversight or other mistake, the Court expects that the attorney will upon his or her own motion undertake a prompt and thorough review of the matter to assure that justice is served.

    The Debtor's original Schedule F listed eighteen different debts aggregating a total sum of $193,243.79, of which seven debts in an aggregate amount of $70,663.80 were listed as disputed. One of the undisputed debts was to "Discover Financial S" in the amount of $6,406.00. On January 5 and January 20, 2009, the Debtor filed notices of amendments to her list of creditors listing five additional claims, four of which were marked as disputed. On December 17, 2009 the Debtor filed, under penalty of perjury, an amended Schedule F "to reflect disputed debts, and to remove two debts that were scheduled in error" (docket entry # 165). The revised Schedule F listed eighteen different debts aggregating $115,850.79, all but three of which were listed as disputed. The only undisputed unsecured debts were the same already

---

[9] See docket entries in this case # 268-71.

mentioned Discover debt, a GM credit card balance in the indicated amount of $600.00,[10] and a Sam's Club credit card in the amount of $300.00.[11] In an exchange of letters between Mr. Copeland and the Court regarding the Court's inquiry regarding the Discover Card proof of claim, the former has offered the following account of the matter:

> [I]n a series of e-mails Mrs. Adams explained to me that when she was preparing to file for Chapter 13 she obtained off of the Internet a copy of her credit report. That credit report showed that she had an outstanding balance on her Discover card. This card was a valid debt and was listed on her schedules as an undisputed debt at the balance shown in the credit report. However, following the filing of the Chapter 13, she advised me last night that Discover, after filing, had applied approximately $2,600 of credits to that account, which paid that account in full. The Discover card account that was disputed was an account that was created by the woman who used her identity. Therefore, Mrs. Adams believes that her valid creditor has been paid in full.

Letter dated November 22, 2011 from Mr. Copeland. To this explanation, the Court responded with the following observations:

> I went back and looked at the amended Schedule F filed on December 17, 2009. It referenced only one Discover account, not two, and indicated that the debt was not disputed. The debt amount was shown as $6,406, which I believe is almost exactly the claim which Discover filed in the case which resulted in your objection. Even if Discover applied approximately $2,600 in credits to the account, it would not have satisfied an account balance exceeding $6,000. Accordingly, please review further and advise.

Letter to Mr. Copeland dated November 22, 2011. Counsel further responded as follows:

---

[10] There does not appear to have been a claim filed with respect to any such account.

[11] GE Money Bank dba Sam's Club Discover filed a proof of claim in the amount of $7,450.72 (claim # 16) and GE Money Bank dba Sam's Club BRC filed a proof of claim in the amount of $2,384.35 (claim # 18). The Debtor objected to both claims on the ground of identity theft and the claims were disallowed by Order entered November 16, 2009.

14

> I have gone back to Mrs. Adams and she has gone back to her records and as she said in her answer to interrogatories she once had owned a Discover card. The number for that card was 6011-3710-0184-3431. She believes that this credit card had a balance of approximately $2,600 and it was paid just before the bankruptcy. She is looking for the canceled check, but cannot find it at the time I am preparing this response.
>
> In addition, I have gone back through my files and found a credit report that Mrs. Adams had given me from the year 2007 and the account number on that credit card matches up to the credit card number on the schedules. I have attached a copy of the portion of the credit report that shows that Mrs. Adams had previously disputed this debt to the credit reporting agency. Also, in reviewing my file, I found a rough draft of Schedule F that I had marked up for my paralegal and in that markup the debt to Discover is marked as "disputed." . . . I hope that with the number of the Discover card that Mrs. Adams owned, along with her prior dispute of the Discover card in question and my rough draft of the schedules shows that the Debtor properly objected to a debt which was not hers."

Letter dated November 23, 2011 from Mr. Copeland. So, to accept this latter explanation, the Court must be prepared to recognize that such account establishes that counsel twice approved and filed on behalf of the Debtor a Schedule F, the amended version of which was specifically prepared in part to dispute certain debts which had previously been noted as undisputed, which incorrectly reflected as undisputed a credit card debt which his client actually disputed, and that the client twice approved such schedule for filing with this Court.[12] Furthermore, although the Debtor represents in responding to the Court's inquiry about the disallowance of the Discover Card account that she had paid off an undisputed account to that company "just before" filing her petition in this Court, her Schedule of Financial Affairs sets forth only the following payments to her creditors within ninety days prior to her bankruptcy filing: GM Card on October 10,

---

[12] The Court notes that no subsequent amendment to Schedule F was made following the Court's March 1, 2010 decision previously noted.

15

November 10 and December 10, 2008 for $500, $300 and $200, respectively; Lowe's with same dates of payment for $300 each;[13] and a regular monthly payment to Wachovia in the amount of $1,807.29.

Under any evaluation of this account, the Firm has not treated its preparation of the bankruptcy schedules and other pleadings filed with this Court with the care which they deserved and with a sufficient sensitivity to the principle that in its efforts to achieve the client's desired ends it must not lend its considerable talents to assisting a client to utilize the bankruptcy process to escape responsibility for valid as well as erroneous unsecured claims. As this Court has previously noted, the Firm obtained confirmation of a Plan promising $48,000 (before Trustee's commissions and other administrative costs) to her unsecured creditors and then challenged every single unsecured claim that was filed against the estate. If those efforts had been completely successful, there would have been no allowed claims against the Chapter 13 bankruptcy estate and the promised distributions to unsecured creditors would have vanished like early morning fog on a sunny day.

Accordingly, the Court will reduce approved compensation by another $750, which the Court hopes will be sufficient to serve as a continuing reminder to counsel that the privilege of practicing in this Court comes with a weighty responsibility to discharge the responsibilities incumbent upon an officer of the Court to assure that pleadings filed in a bankruptcy proceeding are carefully reviewed and are in accord with justice and the actual facts

---

[13] Interestingly, despite this reported history of regular payments to Lowe's in the period preceding her bankruptcy filing, the Debtor also objected to Claim #17 filed by GE Money Bank dba LOWES BRC in the amount of $3,504.17 for goods provided by Lowe's. The claim filer did not respond to the objection, which was sustained by an order of this Court on November 16, 2009 (docket entry #136).

of a matter.  In setting this amount the Court has taken into consideration the fact that the Application does not reflect any of the Firm's pre-filing services to the Debtor or its other post-filing non-claim related general services it has provided in this lengthy case which otherwise under the terms of the confirmation order it had a basis for inclusion in its Application.  If such other services had been included, the amount of the reduction set by the Court under this sub-section would be larger.

      3.  In accordance with the provisions of the confirmation order in this case, the amount of compensation awarded will be credited with the $1,500 received by counsel prior to the filing of the Debtor's petition.

      An order in accordance with the foregoing will be entered contemporaneously herewith.

      DECIDED this 1st day of December, 2011.

_/s/ William F. Stone, Jr._

UNITED STATES BANKRUPTCY JUDGE