IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MARY ADAMS | ) | CASE NO. 09-70001 |
| | ) | |
| Debtor. | ) | DEBTOR'S COUNSEL'S MOTION |
| | ) | TO WITHDRAW AS COUNSEL |

## MEMORANDUM DECISION

The discomforting matter before the Court is the Motion of Robert T. Copeland, Esq., who has served as counsel for the Debtor since the commencement of this difficult case, to be permitted to withdraw as such counsel at a critical point when a number of serious issues remain unresolved, including motions by the United States Trustee and the Chapter 13 Trustee to dismiss the case or convert it to Chapter 7. Distilled to their essence the grounds for this Motion relate to information obtained by him during the course of representing the Debtor, some in connection with communications from his client and some by other means, which he believes places him in an untenable situation of possible conflict between his professional duties to his client and his responsibilities as an officer of the Court, and the impact of such information upon the mutual trust and confidence normally incident to the attorney/client relationship.

This Court has held two extraordinary closed hearings upon the Motion, the first of which was adjourned due to the Debtor's inability for medical reasons to continue to its intended conclusion. Certain exhibits, some offered by counsel and some by the Debtor, have been admitted into evidence under seal with respect to the Motion. At the initial hearing counsel made an extended oral statement to the Court as to the basis for filing the Motion. The Debtor was present during the entirety of this statement, but left the courtroom immediately thereafter

with an indication that she could not get her breath and was taken to a hospital by an emergency vehicle. At the continued hearing Ms. Adams was permitted to question counsel under oath and she then testified under oath herself. During that testimony she did not significantly, if at all, criticize her counsel or his representation of her in this case, but did express what seemed to be a strong feeling on her part that she had not received justice from this Court. Further, while she did not agree with his position, she also stated that she didn't believe that her attorney should be compelled to remain as her counsel against his will. She further testified that she believed that Mr. Copeland had earned the compensation he had received during the case. Finally, she indicated that if Mr. Copeland were relieved as her counsel, she believed that she would have great difficulty in obtaining new bankruptcy counsel, a concern which this Court shares.

DISCUSSION

This Court has devoted considerable thought to the proper resolution of the Motion because it believes there are a number of countervailing considerations which ought to be weighed in that process and its sense that such resolution might be something other than an unconditional granting or denial of the relief sought. Certainly a factor in favor of granting the Motion is the Court's agreement with counsel's assessment that his vigorous advocacy of his client's factual contentions in evidentiary hearings yet to occur in the case has been compromised and rendered problematic. In most cases that recognition would be sufficient standing alone to grant the Motion without further inquiry. However, the Court concludes that exceptional circumstances are present here which call such a ruling into question. Those countervailing considerations are as follows:

1. The first of these considerations has already been mentioned, which is that the history of this case and the numerous contentions which have been advanced both against the Debtor and in her favor which remain unresolved persuade the Court that the Debtor may find retention of competent new bankruptcy counsel for the remainder of the case challenging at best and perhaps beyond her ability to arrange. The Court doubts that she would be able to represent herself competently in dealing with the difficult issues, decisions and litigation which lie ahead before this case is over.

2. While it appears that there are serious factual issues yet to be determined in this case, there are a number of possibly case-decisive purely legal issues which are also presented. For example, the pending motions to convert or dismiss the case rely in major part upon certain purportedly improper conduct on the Debtor's part which preceded the confirmation of the Debtor's Chapter 13 Plan. Mr. Copeland has very properly raised on the Debtor's behalf to these motions the very weighty argument that the Bankruptcy Code provides in § 1327(a) that "the provisions of a confirmed plan bind the debtor and each creditor" and in § 1330(a) the only basis provided for revocation of an order of confirmation which has become final is pursuant to a "request of a party in interest at any time within 180 days after the date of entry of an order of confirmation . . . if such order was procured by fraud." In this case the Debtor's Chapter 13 Plan was confirmed on July 17, 2009 and the first post-confirmation motion seeking dismissal or conversion of the case based on the Debtor's alleged wrongful conduct wasn't filed until November 29, 2011, more than two years later. Another example is the adversary proceeding which Mr. Copeland filed on January 10, 2012 against Wells Fargo Bank, N.A. (formerly Wachovia) challenging the payoff amounts which it had demanded to satisfy the two deeds of

trust which it held against the Debtor's residence property sold pursuant to this Court's order of December 15, 2011. Yet another is even if the Debtor did testify falsely in hearings before the Court seeking its approval of the sale of the Debtor's residence property, as is being claimed, whether that fact would make any difference in determining the Debtor's entitlement to the net proceeds of such property's sale. These issues are either totally or mostly legal rather than factual issues and the Court does not see any professional impediment to counsel's continued handling of these and other similar legal contentions on the Debtor's behalf.

3. The Court has seen no evidence that personal dislike or antagonism has developed between Ms. Adams and Mr. Copeland and they seem to remain on good terms on a person-to-person basis. I do not mean to suggest that Mr. Copeland's patience has not been severely tested by reason of the events which have prompted the filing of the Motion, but that, to his credit, they have not resulted in any apparent personal hostility between lawyer and client.

4. Early in the conduct of this case, the original Chapter 13 Trustee in this case, Ms. Widener, apparently sagely anticipating much of the litigation which has been its defining nature, negotiated with Mr. Copeland caps upon the fees he would receive for his services on behalf of the Debtor. That agreement, the details of which are discussed in considerable detail in this Court's Memorandum Decision dated December 1, 2011, case docket # 284, has been beneficial to the Debtor and the bankruptcy estate. Those fee limits were intended to be for all the services rendered by Mr. Copeland until the end of the case, a point which has not yet arrived, although it may be in prospect. In that Memorandum Decision this Court declined to allow, for reasons set forth there, even the full amount of the compensation which had been negotiated. The Court retains discretion to revisit the reduction imposed in that Decision as at

least partial compensation for services he may yet render in this case.

5. Even after becoming aware of the matters which prompted the Motion, Debtor's counsel filed two adversary proceedings on her behalf in this case. No. 12-07004, already mentioned, challenged Wells Fargo's payoff demands for the deed of trust loan upon the Debtor's residence. No. 12-07003 appears intended as something of a preemptive assertion of legal positions which the Debtor might employ in defense of the various adversarial motions against the Debtor which remain pending at this time. While Mr. Copeland states that these two proceedings were filed with the intent to minimize any damage to the client's interests by reason of his withdrawal from the case, counsel nevertheless is responsible for pleadings which he files in this Court, irrespective of the nature of his intent in doing so. The Court is reluctant to allow counsel to make an immediate exit from responsibility for two adversary proceedings which he initiated with knowledge that he was going to request leave of court to withdraw before such proceedings would actually be litigated.[1]

## CONCLUSIONS OF LAW AND DECISION

This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. While it may be that consideration of a motion of counsel for a Chapter 13 bankruptcy debtor to withdraw from that representation is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter "concerning the administration of the estate," the Court

---

[1] The Motion to Withdraw as Counsel and the two adversary proceeding complaints were all filed on January 10, 2012 as case docket entries numbered 325-27.

5

believes that strictly speaking its authority to make a final ruling on such a matter derives from the authority of any court to supervise the practice of law by members of its bar in cases and other proceedings before that court.  That is particularly true of bankruptcy courts as the Code expressly provides in § 329 for their role in scrutinizing debtors' transactions with their own attorneys and in § 330(a)(4)(B) to approve compensation for Chapter 13 debtors' lawyers.

The Court is satisfied that Mr. Copeland has taken proper action under the Virginia Rules of Professional Conduct to apprise it of certain information pursuant to his responsibility as an officer of the court and in seeking this Court's permission pursuant to our Local Rule 2091-1 to withdraw from further representation of his client.  Accordingly, subject to the limitation detailed below, his request to withdraw as the Debtor's general bankruptcy counsel in this case will be granted.  He will remain, however, as special bankruptcy counsel to the Debtor to make arguments on her behalf at hearings in the case, or in adversary proceedings applicable to this case, about the proper interpretation and application of governing bankruptcy law, or to assist her new general bankruptcy counsel, if any, in doing so, as the case may be, until this case is concluded or the Debtor sooner notifies him of her desire to terminate his continued limited representation of her interests.  He shall have no obligation, however, to file new pleadings on her behalf unless explicitly directed otherwise by the Court, such as, for example, filing a brief with respect to some legal issue being considered by the Court or preparing an order memorializing some ruling by the Court.  Neither shall he have any duty to advance factual contentions by the Debtor or to examine or cross-examine witnesses at any evidentiary hearing hereafter scheduled.

The Court will grant the Debtor twenty-one days from the date of this ruling to retain a new attorney to represent her generally in this case and for such attorney to file a notice of appearance on her behalf in this case, failing which she will be obliged to proceed pro se in this case subject to Mr. Copeland's limited continuing representation as provided for above. An order in accordance with this decision will be entered contemporaneously herewith.

This 5th day of March, 2012.

_____
UNITED STATES BANKRUPTCY JUDGE