**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 13** |
| | ) | |
| **MARY ADAMS** | ) | **CASE NO. 09-70001** |
| | ) | |
| Debtor. | ) | **DISPOSITION OF ESCROWED** |
| | ) | **PROCEEDS OF PERSONAL PROPERTY** |

### MEMORANDUM DECISION

By an Order entered on December 15, 2011 following a lengthy hearing in Abingdon on the preceding day, this Court approved, subject to certain conditions, the sale of the Debtor's residence property, at her request, pursuant to the terms of a certain contract dated December 6, 2011 by which the real estate was sold for $112,500 and certain personal property located upon the premises and purportedly owned by the Debtor's daughter, Ms. Hylea Johnson, was also sold to the indicated purchasers, Thomas and Lisa Spargo, for an additional $12,500. At that hearing the Debtor was the only witness to testify about that contract and she was asked a number of questions, by both counsel and the Court, concerning the making of that contract with respect to the personal property as well as the real estate. Because of concerns by the Court as to the internal consistency of the Debtor's answers to the various questions which were asked her, one of the conditions it set out in its ruling was that one-half of the allocated proceeds to the personal property would be escrowed pending either testimony from Ms. Johnson or her submission of an affidavit in a form and substance satisfactory to the United States Trustee and the Chapter 13 Trustee establishing her ownership in fact of such property and the value

assigned to it in the contract.[1]  No such affidavit was forthcoming,[2] but Ms. Johnson did appear and testify at a continued hearing on February 8, 2012.  For the reasons noted below, the Court concludes that at least as to some of the property in question, a painting purchased by Ms. Adams at a price of more than $5,000 and a "Dixie Chopper" riding lawn mower, the requisite delivery of such property to constitute a completed gift under Virginia law never occurred and that such property remained the property of Ms. Adams at the time of its purported sale to the Spargos.  Accordingly, the Court will direct that such proceeds continue to be held in escrow pending determination of the disposition of the net proceeds of the sale of the real estate remaining after satisfaction of the mortgage indebtedness encumbering it and the expenses of the sale transaction.[3]

---

[1] Paragraph no. 5 of the Court's order provides as follows:
> **5.** It is further ordered that in order to ensure the integrity of the transaction, fifty (50%) of the proceeds of the sale of the personal property, which total $12,500.00, shall be held by the settlement agent, if bonded, or by counsel for the debtor, Robert T. Copeland in his general trust account pending a further order of this Court.  Additionally, Hylea Johnson, the debtor's daughter, shall appear before this Court on January 4, 2012 at 2:00 PM to testify regarding the sale of the personal property, or in the alternative shall provide to this court an affidavit, in a form acceptable to United States Trustee and to the Chapter 13 Trustee that she is the owner of the personal property, verifying the value of the personal property, and that she is not receiving any proceeds of sale that she intends to remit to her mother from this transaction.

[2] Ms. Johnson did file prior to the February 8, 2012 hearing a letter with the Court, docketed as entry # 356, dealing with these matters, but it was not under oath and had not been approved by the United States Trustee or the Chapter 13 Trustee.

[3] The net proceeds of the sale of the real estate are the subject of a motion for distribution filed by the Debtor, docket entry # 309.  The determination of this motion has been recused by the undersigned judge to Judge Krumm of this Court pursuant to an order entered on March 9, 2012.

At the February 8, 2012 hearing Ms. Johnson testified that she was the owner of the personal property detailed in the attachment to the December 6, 2011 real estate contract but that she had not negotiated directly with the Spargos with respect to its sale.[4] She stated that she had not received the check for the $6,250 proceeds representing one-half of the proceeds attributable to the sale of the personal property, but that her mother had deposited it into a joint account in both their names. She further stated that she had not spent any of such amount, but did not indicate whether her mother had done so or whether such proceeds remained in the account as of the time of the hearing. Ms. Johnson testified that the painting, signed by the artist, Thomas Kinkade, had been purchased some years previously by her mother on a joint vacation trip to Florida, at a price of between $5,000 and $6,000, that she had admired the painting, that her mother had made a gift of it to her, that the picture had been hung in her mother's home, and that she had not taken it with her when she left there. She stated that she had never taken it with her because the painting was a large one and she didn't have a proper place to be able to hang it. When the Court asked her when she had last seen the picture, she stated that she had last seen it in the rented house in Wytheville to which her mother had moved after the close of the sale of her residence property, that her mother indicated that the Spargos did not want the painting, but that she further understood that later the picture was returned to the residence property under circumstances not clear to the Court.

Ms. Johnson valued the "Dixie Chopper" mower at between $4,000 and $5,000 and testified that her mother had made a gift of it to her some years ago when her son, now

---

[4] Ms. Adams, at the December 14 hearing seeking court approval of the real estate contract, testified that her daughter had negotiated the sale of her own property directly with the Spargos.

twelve, was about four. This mower remained at the mother's residence and at no time did Ms. Johnson take actual possession of the mower and remove it from her mother's property.

The other property covered by the addendum to the real estate contract itemizing the personal property included a collection of "Fenton" glass, a separate collection of "Boyd" stuffed bears, and several items of exercise equipment. The most significant item of the exercise equipment was a "tread climber" which Ms. Johnson testified that she had purchased with her own money at a cost of approximately $3,500. Ms. Johnson valued the glass collection at $2,000 to $3,000, but was unable to provide an aggregate valuation for the stuffed bears collection. It was very unclear from Ms. Johnson's testimony as to how the $12,500 total value for this property was determined. She did recall that there had been some mention of it in a phone conversation with her mother, the Debtor, but was either unable or unwilling to say who actually had come up with the figure. According to the testimony of the Debtor at the December 14 hearing, the Spargos had a maximum of $125,000 to spend on the transaction. The Court finds that the greater weight of the evidence is that Ms. Adams handled this negotiation and the allocation of the total transaction consideration, very likely influenced by an earlier appraisal of $112,500 as a "quick sale" valuation for the real estate alone. The Court accepts the testimony of Ms. Johnson that she had bought the exercise equipment with her own money and therefore that it was her sole property. The assembly of the glass and stuffed bears collections appears to have taken place over many years going back to Ms. Johnson's childhood. The Court will base its decision purely on the painting and riding mower, which upon the evidence appear to have had a value of at least 50%, if not more, of the $12,500 value allocated by the contract to the personal property.

CONCLUSIONS OF LAW

This Court has jurisdiction of this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. "[O]rders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate" are "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(N). The Court further concludes that determination of the actual ownership of property as to which a good faith and factually grounded claim of ownership by the Debtor or the bankruptcy estate has been advanced is likewise a "core" proceeding, the specific enumerations of "core" proceedings in § 157(b)(2) being expressly characterized as examples rather than a complete listing. It seems axiomatic that for a court to have jurisdiction and control over the bankruptcy "res," it must have the authority to determine whether specific property is or is not included in that "res."

A more difficult issue is whether the procedural posture of this case is such that the Court may properly determine Ms. Johnson's ownership interest, if any, in the property in question. The normal manner in which such an issue would be presented would be in an adversary proceeding pursuant to Part VII of the Federal Rules of Bankruptcy Procedure. As pertinent to the situation presented here, Rule 7001(2) provides that, subject to one exception not applicable to this matter, "a proceeding to determine the validity, priority or extent of a lien or other interest in property" is an "adversary proceeding." The Court concludes, however, that the precise matter before it simply requires a determination of whether Ms. Johnson has sufficiently established that the personal property in question was legally hers as of the time of its purported sale to the Spargos to the exclusion of any interest of her mother or her mother's creditors in

such property.  The Court concludes that she has not done so and explains why below.

At the conclusion of the February 8 hearing, counsel for the Chapter 13 Trustee argued that the evidence did not establish that "delivery" of the painting and riding mower to Ms. Johnson as required by Virginia law for a "completed" gift had ever occurred.  After review of the applicable authorities and careful consideration of the evidence, the Court agrees.  The Code of Virginia of 1950, which as amended remains in force to this time, provides in § 55-3 as follows:

> No gift of any goods or chattels shall be valid unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him.  If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession with the meaning of this section.  This section shall not apply to personal property used exclusively by the donee.

There simply is no evidence before the Court that Ms. Johnson ever assumed actual possession of the Kinkade painting or the "Dixie Chopper" mower or ever removed them from her mother's home.  Neither is there is any indication that any written instrument in the nature of a deed or bill of sale was ever prepared with respect to such property.  Neither is there any evidence that Ms. Johnson ever insured any of this property; rather the evidence is that if such property was insured at all, it was under the mother's homeowner's insurance policy.  Bankruptcy Judge Blackwell N. Shelley, now deceased, of the Eastern District of Virginia, reviewed the applicable principles of Virginia law in a 1984 decision dealing with a purported gift of an antique Dusenberg race car by a father to his son, but which had remained stored in a trailer owned by a third party on property owned by the father.  In holding that no valid gift had occurred, Judge Shelley noted as follows:

> This Court has not overlooked the fact that the parties sincerely intended to make a gift.  However, the requirement that there be a sufficient delivery to evidence the gift has been a part of the law dating back to England and the Roman civil law.  *See Young v. Field*, 85 Va. 756, 8 S.E. 721 (1889).  The purpose of the requirement is to prevent fraud and perjury.  *Id.* at 760.  Ownership of personal property would always be in doubt if the law would countenance a state of affairs where individuals could pass ownership of their personal property back and forth merely in their minds without any overt acts to evidence such gifts.  As such, the law has a beneficial purpose although it may work hardship in an individual case.

*Sadler v. Garrett (In re Garrett)*, 45 B.R. 190, 193 (Bankr. E.D. Va. 1984).  Judge Anderson of this Court applied the same principle to deny a wife's claim of exemption in a jet ski, which her husband had acquired but considered to be hers, in the case of *In re Wilkinson*, 100 B.R. 315, 317 (Bankr. W.D. Va. 1989).

While this reason is sufficient by itself to decide the issue, the Court observes that other evidence in the case provides additional support to its ruling.  Specifically, the facts that Ms. Johnson did not negotiate the sale of "her" property to the Spargos, she did not attend the closing of the transaction, she did not receive the check for $6,250 for one-half of the consideration allocated to the personal property, the Debtor deposited the check into a joint account to which both she and her daughter had access, Ms. Johnson had not attempted to use or otherwise exercise ownership of such proceeds after their deposit into the joint account, and the initial relocation of the Kinkade painting from the residence property sold to the Spargos to the Debtor's post-sale rented house all support a conclusion that such painting and the riding mower continued to be under the dominion and control of the Debtor until the closing of the real estate contract, and in the case of the painting even beyond that event.

Accordingly, by a separate order the Court will direct that the remaining proceeds allocated by the contract to the personal property shall continue to be held in escrow pending further rulings in this case and a subsequent order fixing the ultimate entitlement thereto.

This 14th day of March, 2012.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE